693 A.2d 824

**WINMARK LIMITED PARTNERSHIP et al.**

v.

**MILES & STOCKBRIDGE, et al.**

**No. 57, Sept.Term 1996.**

Court of Appeals of Maryland.

May 9, 1997.

Steven B. Preller, Annapolis, for Petitioners.

John E. Sandbower, III (Sandbower & Gabler, P.A., Baltimore; Paul W. Spence, Spence, Kohler, Christie & Pulver, P.A., Towson), on brief, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

In this case we consider whether a debtor's nondisclosure, as an asset, of a potential tort claim during a debtor in possession reorganization under Chapter 11 of the Bankruptcy Code bars the debtor from post-confirmation litigation of that

claim against defendants who were not creditors in the bankruptcy.

The petitioners are WinMark Limited Partnership (WinMark) and its two general partners, Jay A. Winer (Winer) and Mark Sapperstein (Sapperstein). WinMark was formed in 1987 for the purpose of owning, developing, and leasing two office buildings on two adjoining parcels of land (the Front Parcel and the Back Parcel), totalling 5.324 acres, in Odenton, Anne Arundel County. The respondents are Miles & Stockbridge, a law firm, and two of its attorneys (hereinafter collectively Miles). In September 1994, the petitioners sued Miles alleging professional negligence and breach of contract. The claims arise out of the background events hereinafter generally described.[1]

In June 1988, WinMark borrowed $2,070,000 under a construction loan, secured by a first lien on the Front Parcel, from Sovran Bank/Maryland, later succeeded by NationsBank of Maryland, N.A. (the Bank). On May 17, 1990, WinMark borrowed $300,000 from the Bank on a land loan that was secured by a first lien on the undeveloped Back Parcel. The land loan was due November 16, 1991. Winer and Sapperstein personally guaranteed both loans.

As the due date of the land loan approached in the fall of 1991, WinMark negotiated with the Bank for an extension of the land loan and for a restructuring of the construction loan to take advantage of lower prevailing interest rates. Petitioners alleged that, during this period, Miles represented both petitioners and the Bank in the negotiations and that Miles did so until some time in December 1991 when Miles withdrew from representation of the petitioners, but continued representation of the Bank. Petitioners further allege that an agreement was reached in January 1992 with the Bank under which WinMark paid in full the $300,000 land loan and continued to make all timely payments on the construction loan but

---

1. The facts are drawn from petitioners' complaint and from the exhibits to Miles's motion for summary judgment that was titled, "Motion to Dismiss."

that the Bank nevertheless notified WinMark that it was in default on the construction loan. This precipitated an injunction action in the Circuit Court for Anne Arundel County by petitioners against the Bank resulting in an order in February 1992, enjoining the Bank from exercising any default remedies under the construction loan.[2]

The petitioners allege that "[s]ubsequent to the litigation in State Court, the Bank claimed that it was entitled to attorney's fees [in] excess of $200,000." Petitioners further aver that

"[a]s a direct result of the Bank's demand for attorney fees allegedly due from the State Court litigation, WinMark and the Bank were unable to agree on the terms of refinancing of the Construction Loan at maturity, and, consequently, WinMark was forced to file bankruptcy under Chapter 11 of the Bankruptcy Code on July 20, 1993."

Neither Winer nor Sapperstein, the guarantors, petitioned in bankruptcy.

WinMark's second amended plan of reorganization (the Plan) was confirmed on March 14, 1994. Under the Plan WinMark is a debtor in possession. On April 28, 1994, the petitioners and others executed a general release of the Bank, therein called the Lender. That release defines "Releasees" to mean, *inter alia,* "(iii) the Lender's officers, ... agents, attorneys, ... but only in their respective capacities as such...."

Six months after confirmation of the Plan, petitioners instituted in the Circuit Court for Baltimore City the instant action against Miles. The theory of the complaint is that the petitioners were deprived of zealous representation in their workout negotiations with the Bank because of the alleged conflict of interests on the part of Miles.

Accepting the allegations of the complaint as true for purposes of the responsive motion, Miles raised a number of legal

---

2. The injunction was dismissed without prejudice after the automatic stay in WinMark's bankruptcy took effect.

defenses, including release and judicial estoppel. The defense of release was based on the document of April 28, 1994. The factual predicate for the judicial estoppel argument was the absence from WinMark's filings in the Chapter 11 proceedings of any reference to the claim against Miles as an asset of the bankruptcy estate. For example, WinMark's statement of financial affairs, filed with the bankruptcy court, included a schedule of personal property. WinMark replied, "None," in answer to the category: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."

On the other hand, petitioners argued to the circuit court, *inter alia*, that the position asserted by Miles was not consistent with the policy of the Bankruptcy Code. Petitioners said that the claim "is an asset of the [bankruptcy] estate and our position is that policy dictates that [the] estate be there for the creditors. The purpose of disclosure in a Chapter 11 case is for the creditors. It is not for somebody not involved in the case." WinMark also represented that the Plan had not been substantially completed and that the Plan was still subject to amendment.

The circuit court held that the claim was barred by judicial estoppel and by the release. In addition, the circuit court alternatively held that the factual allegations of the complaint were not sufficient to support petitioners' claim for punitive damages.

Petitioners appealed to the Court of Special Appeals. That court affirmed in an opinion that relied exclusively on the judicial estoppel defense, one of the two grounds on which the circuit court had relied in granting summary judgment for Miles on the entirety of the claims against it. *WinMark Ltd. Partnership v. Miles & Stockbridge,* 109 Md.App. 149, 674 A.2d 73 (1996). We granted the petitioners' request for the writ of certiorari, primarily to consider the application to the instant matter of *Adams v. Manown,* 328 Md. 463, 615 A.2d 611 (1992), which had not been cited to, or by, either of the courts below.

I

The concept of judicial estoppel is perhaps best presented by an illustration. In *Kramer v. Globe Brewing Co.*, 175 Md. 461, 2 A.2d 634 (1938), Kramer had been injured when a beer truck in which he was riding as a helper overturned. Kramer considered that he had been hired by the driver, acting without any authority of the brewery, and that, as helper, he would be paid by the driver out of the driver's wages from the brewery. *Id.* at 463, 2 A.2d at 634. When Kramer sued the brewery and the driver in a common law tort action, the brewery raised the defense of workers' compensation exclusivity, averring that Kramer was its employee. After obtaining a voluntary dismissal without prejudice of the tort action, Kramer sought workers' compensation. It was denied by the Workers' Compensation Commission, and that denial was affirmed in the circuit court. *Id.* at 466, 2 A.2d at 636. This Court reversed and remanded, setting forth the rationale behind the doctrine of judicial estoppel, as follows:

> " 'If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.' "

*Id.* at 469, 2 A.2d at 637 (quoting *Bigelow on Estoppel* 783 (6th ed.) and citing *Ohio & Mississippi Ry. Co. v. McCarthy*, 96 U.S. 258, 267–68, 24 L.Ed. 693, 696 (1877) ("Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his

hold. He is estopped from doing it by a settled principle of law.")).

This Court also applied judicial estoppel against a widower who, in the probate of his wife's estate in Maine, had taken the position that certain securities were part of the corpus of a trust of which he was successor to his wife as trustee, but who, in an action in Maryland for distribution of those securities upon termination of that trust, took the position that the securities were his own individual property. *See Stone v. Stone,* 230 Md. 248, 186 A.2d 590 (1962).

In the instant matter our inquiry is whether judicial estoppel applies when three circumstances are present: (1) the plaintiff in the civil action in which judicial estoppel is raised as a defense is or was a debtor in possession in a proceeding under Chapter 11 of the Bankruptcy Code, (2) the claim arose prior to commencement of the bankruptcy proceeding, and (3) the claim was not listed in the schedules and disclosure statements filed by the debtor in the bankruptcy proceeding. As the decisions hereinafter cited and discussed will illustrate, judicial estoppel is to be distinguished from equitable estoppel and *res judicata.* Where the defendant in the subsequent civil action was a substantial creditor in the Chapter 11 proceedings in which a plan of reorganization was confirmed, the debtor, as plaintiff in the civil action, may be equitably estopped because of the reliance by the creditor, in voting for the plan of reorganization, on the absence, as a disclosed asset, of any claim by the debtor against that creditor. Similarly to be distinguished from the judicial estoppel issue are those cases in which the circumstances surrounding the confirmation of the plan of arrangement cause the order of confirmation to have claim or issue preclusion effect on the claim asserted in the subsequent civil action by the debtor against the creditor.

The issue before us lies at the juncture of competing interests. As a result, the reported decisions fall into one of two categories. Cases in the numerically larger category emphasize maintaining the integrity of the judicial system by

avoiding the unseemly encouragement of litigants' playing "fast and loose" with the judicial system. A minority of cases give determinative weight to the interest of the bankruptcy creditors of the debtor, who should be the initial recipients of any net recovery on the asset represented by the undisclosed claim. The two views are respectively found in the majority and dissenting opinions in *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

*Oneida*, in addition to presenting the three basic circumstances of the issue before us, also involved a principal bankruptcy creditor as the civil action defendant. Further, after the civil action was filed "the plan was modified in order that one-third of the net recovery that Oneida might obtain against the bank in [the] lawsuit be paid to the creditors." *Id.* at 416 n. 1.[3] The court emphasized that 11 U.S.C. § 1125(b) prohibits solicitation of approval of a plan of reorganization by a holder of a claim against the bankruptcy estate without transmitting "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." "Adequate information" is defined in § 1125(a)(1) to mean "information of a kind, and in sufficient detail ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . . ."

The *Oneida* majority first applied an equitable estoppel analysis. It pointed to "[t]he importance of full disclosure [as]

---

**3.** An additional factor that was present in *Oneida* is referred to in a later opinion of the Third Circuit involving judicial estoppel, *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355 (3d Cir.1996). The opinion in *Ryan Operations* points out that "the plaintiff in *Oneida* had not only failed to disclose its potential claim against a bank for $7.7 million as a contingent asset on its § 521 schedule of assets and liabilities, but simultaneously claimed the corresponding $7.7 million debt to the bank as a liability on the same schedule." *Id.* at 362 n. 4. In *Ryan Operations* the Third Circuit reversed a summary judgment against the debtor based on judicial estoppel because there was "no basis in this case for inferring that Ryan deliberately asserted inconsistent positions in order to gain advantage—i.e., that it played fast and loose with the courts." *Id.* at 363.

underlaid by the reliance placed upon the disclosure statement by the creditors and the [bankruptcy] court." *Id.* The court, however, held that the informationally deficient plan was "not cured by the later modification." *Id.* at 418 (footnote omitted). Creditors were not alerted by the original plan to "the possible financial benefits enuring to them upon the successful prosecution of the claim." *Id.* Further, had the civil action defendant known of the potential lawsuit, it might not have stipulated concerning its lien and voted for confirmation of the plan. *Id.*

The majority in *Oneida* also applied judicial estoppel, which, it said, "looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Id.* at 419. The majority concluded that the debtor's "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect." *Id.* This was because, in the Chapter 11 proceedings, the debtor, by silence, had treated the bank's claim as undisputed. *Id.* Accordingly, the court affirmed the district court's dismissal of the civil action.

The dissent presented the case for the other interest involved in the problem, saying:

> "Concern for Oneida's numerous unsecured creditors compels me to dissent from the court's disposition. Those creditors, as well as Oneida, stand to lose by virtue of that disposition. If Oneida had been able to foresee this court's novel application of equitable and judicial estoppel, it would have been able to protect itself against the loss the court today imposes upon it. Oneida's unsecured creditors, however, had no way of protecting themselves and should not be required to contribute towards a windfall for an alleged wrongdoer."

*Id.* at 420 (Stapleton, J., dissenting).

The dissent further said:

> "The Code's disclosure requirements are intended to protect those creditors whom a debtor's failure to disclose hidden assets would prejudice. *A fortiori,* a court's re-

sponse to nondisclosure should do likewise. Not only does the court fail to safeguard the interests of Oneida's unsecured creditors, but it effectively penalizes them by foreclosing the prosecution of claims against the bank that would, if successful, result in a substantial enhancement of the estate and in their receiving more than the approximately thirty cents on the dollar for which they have been forced to settle. The only real winner in the case as decided is the bank, whom the court has relieved of the responsibility of justifying its allegedly improper behavior."

*Id.* at 422–23.

The issue before us has been resolved by dismissal of claims on the ground of judicial estoppel, applied either exclusively or in conjunction with other defenses, in the following cases: *Payless Wholesale Distribs. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.) (a 110 page complaint alleging twenty causes of action and claiming on each between $5 million and $150 million damages), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *Rosenshein v. Kleban*, 918 F.Supp. 98 (S.D.N.Y.1996) (claim against prior property owners for environmental clean up costs; also lack of standing); *Pako Corp. v. Citytrust*, 109 B.R. 368 (D.Minn.1989) (lender liability); *In re Hoffman*, 99 B.R. 929 (N.D.Iowa 1989) (lender liability; also *res judicata*, equitable estoppel, and general equity); *In re H.R.P. Auto Center, Inc.*, 130 B.R. 247 (Bankr. N.D.Ohio 1991) (overpayment of sales tax; also equitable estoppel and laches); *In re Little*, 126 B.R. 861 (Bankr. N.D.Miss.1991) (lender liability; also *res judicata*, equitable estoppel, and waiver); *Cafferty v. Thompson*, 223 A.D.2d 99, 644 N.Y.S.2d 584 (legal malpractice), *appeal denied*, 88 N.Y.2d 815, 651 N.Y.S.2d 16, 673 N.E.2d 1243 (1996); *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga.App. 454, 442 S.E.2d 265 (1994) (legal malpractice), *cert. denied*, 1994 Ga. LEXIS 702 (Ga. May 5, 1994).

In general, the above-cited cases do not discuss the interest of the creditors. The court in *Payless Wholesale Distribs.* acknowledged that "[i]ndeed, defendants may have a windfall" but concluded that "it [was] an unacceptable abuse of judicial

proceedings" for the debtor to have represented that no claims existed and then to have attempted to resurrect claims and "obtain relief on the opposite basis." 989 F.2d at 571. The court in *Pako Corp.* considered the debtor-plaintiff's argument that it "could pursue the claim 'strictly supervised' by the bankruptcy court"—supervision that Pako apparently had not sought previously. 109 B.R. at 374 (quoting *In re Auto West, Inc.*, 43 B.R. 761, 764 (D.Utah 1984)). The court acknowledged that having the bankruptcy court "retain jurisdiction to oversee the equitable distribution of the proceeds from the claim" may be "the preferable rule in that it prevents an alleged wrongdoer from receiving the windfall that would result from a finding that the claim was barred by estoppel." *Id.* The court simply concluded its discussion of the debtor's argument by saying that if the cause of action survived the bankruptcy it "remains subject to the claims of Pako's creditors." *Id.* at 375. In our view, the latter response is a reason not to apply judicial estoppel to extinguish the claim.

*In re Auto West, Inc.*, 43 B.R. 761 (D.Utah 1984), applies the competing philosophy. In that case, more than two years after the debtors had petitioned for relief under Chapter 11, and three months after their plan of reorganization had been confirmed, the debtors petitioned the bankruptcy court for permission to employ counsel in then-pending state court litigation. The claim had not been listed on the bankruptcy schedules, nor mentioned in the disclosure statements, nor treated in the reorganization plan. *Id.* at 762. The civil case defendant argued that it was not in the best interests of the bankruptcy estate to authorize employment of counsel to pursue an action barred by, *inter alia*, estoppel. *Id.*

The court first analyzed provisions of the Bankruptcy Code and concluded that, "[g]iven the express statutory scheme for removing property from a debtor's estate, application of res judicata, estoppel or waiver in this case would be improper." *Id.* at 764. The court then said:

"Moreover, the extinguishment of unscheduled assets is inconsistent with the policy of the Code. Property of the estate is administered by a trustee or debtor in possession

for the benefit of *all* creditors. The debtors in this case, as debtors in possession, hold the title and powers of trustee, subject to the control of the bankruptcy court. 11 U.S.C. § 1107. The debtor in possession is strictly supervised by the bankruptcy court, and its actions, including abandonment or waiver of a chose in action, must be approved. To permit otherwise might be an inducement for a debtor in possession to fail to schedule claims, which might then revert to the debtor's ownership. *See Stein v. United Artists Corp.*, 691 F.2d 885, 892 (9th Cir.1982). Further, waiver of a chose in action that could benefit all creditors to the detriment of one creditor, is inconsistent with the fiduciary obligation of the debtor in possession."

*Id.*

*Greenheart Durawoods, Inc. v. PHF Int'l Corp.*, 1994 WL 652434, 1994 U.S. Dist. LEXIS 16509 (S.D.N.Y. Nov. 15, 1994), reports the denial in the debtor's civil action of a motion to dismiss, based on nondisclosure in bankruptcy of the claim against the defendant who was not a creditor in the bankruptcy. The court distinguished *Pako Corp.*, 109 B.R. 368, on the ground that the civil suit defendant there was a creditor in the bankruptcy. *Greenheart*, 1994 WL 652434 at 4. The court said that "PHF has cited no cases that would support PHF's novel theory that Greenheart's previous omission should result in a windfall to PHF and prevent the reopening of the bankruptcy proceedings to the benefit of Greenheart's creditors." *Id.* at 5. The court concluded that "reopening the bankruptcy proceedings (with the approval of the Bankruptcy Court and on such terms and conditions as the Bankruptcy Court orders) would benefit Greenheart's creditors and would prevent a windfall to PHF." *Id.* at 5. The court ordered the civil action stayed pending the debtor's application to the bankruptcy court and the result thereof. *Id.*

4 D.R. Cowans, *Cowans Bankruptcy Law and Practice* § 20.32(a) (6th ed. 1994) (Cowans), addresses the situation of a debtor in a Chapter 11 reorganization who "does not list an asset in the papers and does not provide for it in the plan." *Id.* at 166. The author concludes that "[n]evertheless, an

asset could not be considered abandoned and the court may approve of appointment of special counsel to collect on the omitted cause of action." *Id.*

This Court, in *Adams v. Manown,* 328 Md. 463, 615 A.2d 611 (1992), espoused the rationale of the *Oneida* dissent and of the minority line of cases reviewed above. *Adams* was an action by a discharged bankrupt, after the estate was closed, to collect a debt which antedated the bankruptcy proceeding. The bankrupt had listed $3,000 of nonexempt assets and debts of $190,000. *Id.* at 468, 615 A.2d at 613. The defendant in the civil action argued that, because the bankrupt had not scheduled the alleged indebtedness in the bankruptcy proceedings, the bankrupt came to court without clean hands and could not enforce the claim. A judgment for $43,000 was entered in favor of the discharged bankrupt, but that judgment was reversed by the Court of Special Appeals which applied the clean hands doctrine. *Manown v. Adams,* 89 Md.App. 503, 598 A.2d 821 (1991).

On certiorari review in *Adams v. Manown* we were faced with the same competing interests presented in the instant matter. Indeed, there, liability of the defendant in the civil action to the discharged bankrupt had been determined by judgment. To the extent that the judgment was collectible, extinguishing it by applying the clean hands doctrine would have resulted in a windfall to the judgment debtor and would have deprived the bankrupt's creditors of an asset from which they should have benefited. We said:

"By raising cries of unclean hands and *in pari delicto,* Manown has successfully presented this case as if the only alternatives were either to give Adams the benefit of his fraud or to give Manown the benefit of a windfall. What has become obfuscated through two levels of courts is that those who are entitled to benefit from the judicial determination of Manown's indebtedness to Adams are the creditors of Adams."

328 Md. at 477, 615 A.2d at 617–18.

■ *Adams v. Manown* controls on the issue of whether judicial estoppel should be applied under the circumstances

presented here. The policy underlying judicial estoppel and underlying the clean hands doctrine is the same. "The clean hands doctrine is not applied for the protection of the parties nor as a punishment to the wrongdoer; rather, the doctrine is intended to protect the courts from having to endorse or reward inequitable conduct." *Id.* at 474–75, 615 A.2d at 616 (citing *Space Aero Prods. Co. v. R.E. Darling Co.,* 238 Md. 93, 120, 208 A.2d 74, 88, *cert. denied,* 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed.2d 83 (1965); *Niner v. Hanson,* 217 Md. 298, 309, 142 A.2d 798, 803 (1958)). Judicial estoppel should not have been applied based on the omission of the WinMark claim against Miles from the bankruptcy papers.

■ Two of the petitioners, Winer and Sapperstein, were not bankrupts. The Court of Special Appeals in its *WinMark* decision sustained the application of judicial estoppel against them because they "stood in a relationship of close privity with WinMark." 109 Md.App. at 174, 674 A.2d at 85. Inasmuch as we have held that judicial estoppel should not have been applied against WinMark, it also should not have been applied against Winer and Sapperstein. Accordingly, the judgment of the Court of Special Appeals will be vacated, and the matter of the claims of Winer and Sapperstein will be remanded to the Court of Special Appeals for consideration of the other arguments that were raised by Miles in support of the judgment of the circuit court.

## II

The disposition of WinMark's claim against Miles involves considerations different from the claims of Winer and Sapperstein, and different from those present in *Adams v. Manown.* The bankruptcy proceedings involved in *Adams* were under Chapter 7 of the Bankruptcy Code, and there had been a trustee appointed by the United States Trustee. 328 Md. at 476–77, 615 A.2d at 617–18. Because the debt due to the bankrupt in *Adams* had neither been administered in the bankruptcy proceedings nor abandoned by the trustee in bankruptcy, it remained property of the bankruptcy estate.

*Id.* at 480, 615 A.2d at 619. Consequently, in that Chapter 7 proceeding, we concluded that the discharged bankrupt was not the real party in interest. *Id.* at 480–81, 615 A.2d at 619. Accordingly, in *Adams,* we remanded the case to the trial court for the purpose of giving notice and an opportunity to intervene to the United States Trustee.

 Under the Bankruptcy Code, in Chapter 11 proceedings, the "confirmation of a plan vests all of the property of the estate in the debtor," unless otherwise provided in the plan or in the order confirming the plan. 11 U.S.C. § 1141(b). Further, § 1141(c) provides that, in general, "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners of the debtor." Property that is not scheduled or disclosed in the bankruptcy proceedings is not "property dealt with by the plan." *Cf. Stein v. United Artists Corp.,* 691 F.2d 885, 889, 893 (9th Cir.1982) (construing "dealt with" under the Bankruptcy Act). Property that has not been "dealt with by the plan" remains with the debtor in possession, but subject to the claims of creditors. *See Rosenshein,* 918 F.Supp. at 102; *Pako,* 109 B.R. at 374; *In re Auto West,* 43 B.R. at 763; *Cowans* § 20.32(a), at 166. Thus, in this Chapter 11 proceeding there is no need, from the standpoint of standing in the state court, for the intervention of a trustee.

██ Under § 1107(a) of the Bankruptcy Code a debtor in possession shall perform "all the functions and duties . . . of a trustee serving in a case under [Chapter 11]." Employment by a trustee of an attorney generally requires the approval of the bankruptcy court. 11 U.S.C. § 327(a). WinMark did not obtain the approval of the bankruptcy court to engage counsel to institute the present action on its behalf. Further, and more substantively, we held, *supra,* that judicial estoppel should not be applied under the circumstances presented so that the action may proceed "strictly supervised" by the bankruptcy court. *In re Auto West,* 43 B.R. at 764. Therefore, we remand the claim of WinMark to the Court of Special Appeals for the purpose of remanding that claim to the Circuit

Court for Baltimore City. The Circuit Court for Baltimore City shall stay further proceedings unless and until the United States Bankruptcy Court for the District of Maryland authorizes further prosecution by WinMark of its claim under conditions satisfactory to that bankruptcy court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CLAIMS OF THE PETITIONERS, JAY A. WINER AND MARK SAPPERSTEIN, REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. CLAIM OF PETITIONER, WINMARK LIMITED PARTNERSHIP, REMANDED TO THE COURT OF SPECIAL APPEALS FOR THE ENTRY OF A JUDGMENT VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMANDING THE CLAIM OF WINMARK LIMITED PARTNERSHIP TO THAT COURT FOR THE ENTRY OF A STAY AND ANY FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND COSTS PREVIOUSLY INCURRED IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.