761 A.2d 1036

**Nathaniel Lee BUTLER**

v.

**Clarence JAMES.**

**No. 2667, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 9, 2000.

Richard E. Schimel (Michael J. Budow and Budow and Noble, P.C., on the brief), Bethesda, for Appellant.

John Critzos, II, Oxon Hill, for Appellee.

Argued before DAVIS, BYRNES and KRAUSER, JJ.

DAVIS, Judge.

Clarence James, appellee, filed suit against Nathaniel Butler, appellant, in the Circuit Court for Prince George's County for injuries appellee alleged that he received when appellant's

pick-up truck struck the rear of the vehicle appellee was driving on May 21, 1998. After the case was removed from the district court to the circuit court upon appellant's prayer for a jury trial, the trial commenced on August 19, 1999; the jury ultimately returned a verdict in favor of appellee. After the lower court denied appellant's Motion for New Trial or Remittitur and granted appellant's motion to amend the ad damnum clause to conform with the verdict amount, appellant noted this timely appeal, in which he raises five questions that we have rephrased and reordered for clarity as follows:

I.      Once appellee submitted medical records and bills under Courts and Judicial Proceedings § 10–104 at trial, was he statutorily precluded from obtaining a judgment in excess of $25,000?

II.     Once appellee filed notice of his intent to admit medical records and bills through Courts and Judicial Proceedings § 10–104, was he then statutorily precluded from obtaining a judgment in excess of $25,000?

III.    Did the trial court err in granting appellee leave to amend his *ad damnum* clause pursuant to Maryland Rule 2–341 to conform to the verdict?

IV.     Did the trial court err in concluding that Courts and Judicial Proceedings § 10–104 was inapplicable to the case because of appellee's presentation of live testimony of a treating chiropractor at trial?

V.      Did the trial court commit reversible error by failing to exercise its discretion when it denied the Motion for New Trial or *Remittitur?*

For the reasons set forth below, we answer appellant's five questions in the affirmative and reverse the decision of the trial court.

## FACTUAL BACKGROUND

Appellee initially filed his claim in the District Court of Maryland for Prince George's County in the amount of $25,-000, along with his intent to introduce in the district court the writings, records, and bills of medical/health care provider,

pursuant to Md.Code (1998 Repl.Vol.), Cts. & Jud.Proc.[1] § 10–104. Appellee gave notice of his intention to introduce medical records from Back to Health Chiropractic Centers, Prince George's Hospital Center, Christopher M. Magee, M.D., as well as medical bills from Back to Health Chiropractic Centers in the amount of $5,855, Prince George's Hospital Center in the amount of $670.98, Chesapeake Emergency Medical Associates in the amount of $145, and Schonholtz, Magee & Michaels, M.D. Orthopaedics, P.A. in the amount of $870. Appellee offered an affidavit of Stephen T. Michaels, M.D., appellee's treating orthopedist, to establish the causal relationship between the motor vehicle accident and the injuries for which appellee received subsequent treatment and the necessity for that treatment as well as the fairness and reasonableness of the medical bills.

Listed in the pre-trial statement by appellee were itemized medical expenses as reflected in the medical bills submitted, as well as notification that appellee intended to establish damages for lost wages in the amount of $922.50. Appellee further indicated that he intended to introduce the medical records, pursuant to § 10–104. Appellant timely filed a prayer for jury trial and the case was transferred to the Circuit Court for Prince George's County.

Counsel for appellee corresponded with appellant's counsel regarding possible stipulations concerning the admissibility of "my 10–104 statement." Appellant responded by letter dated May 18, 1999 that counsel did not want to agree to the admissibility of a "10–104" statement if "there is going to be live testimony." Counsel further indicated that he would agree to a stipulation, pursuant to § 10–104, only as to the records that were not the subject of live testimony.

A bench conference was held at trial when appellee indicated he intended to proceed pursuant to § 10–104 and the lower court ultimately ruled that, because § 10–104(f) provided that

---

1. Unless otherwise indicated, all statutory references in this opinion are to Md.Code (1998 Repl.Vol.), Courts & Judicial Proceedings Article.

nothing contained in this section of the code "may be construed to limit the right of a party to: (1) Request a summons to compel the attendance of a witness; or (2) Examine a witness who appears at trial," the notice given by appellee, pursuant to § 10–104, would be admitted as Exhibit No. 1 and appellee's treating chiropractor, Michael Fedorczyk, D.C., would be permitted to testify at trial.

Dr. Fedorczyk testified that the areas which were injured as a result of the accident might flare up if appellee was overworked, overstressed, or if the weather changes and that, as to future medical intervention, appellee would not need "a lot of future treatment"; the witness indicated appellee "might need treatment when these things flair [sic] up, mild treatment just to get the thing to ... calm down," adding that appellee would not need treatment for the rest of his life. The witness felt that the medical bills were fair, reasonable, and necessary, "within a reasonable degree of chiropractic certainty." The medical bills from Prince George's Hospital Center, Chesapeake Emergency Medical Associates, and Schonholtz, Magee and Michaels, M.D. Orthopaedics, P.A., had previously been admitted into evidence based on the notice, pursuant to § 10–104.

Appellant elected not to call any witnesses and, at the conclusion of the evidence, the trial judge instructed the jury on the issue of damages:

> The personal injury sustained and their [sic] extent and duration, the effect such an injury will have on the physical, mental health, and well being of the [appellant], the physical pain and mental anguish suffered in the past, medical and other expenses reasonably and necessarily incurred in the past, and a loss of earnings in the past.

The trial judge then directed the jury to itemize its award, instructing that the jury "show the amount intended for the medical expenses incurred in the past, the loss of earnings incurred in the past, and the non-economic damages sustained in the past...." In a note from the jury delivered to the trial judge, it requested instructions on the maximum and minimum

amount of available damages which the jury could award. The court simply responded by sending a note that the jury "must decide the appropriate amount of damages based on the evidence you heard." Subsequently, the jury returned a verdict of $7,540.91 for medical expenses, $2,800 for loss of earnings, and $300,000 for non-economic damages. The court, upon appellee's request for leave to amend, permitted appellee to amend his *ad damnum* clause to conform to the jury verdict.

## LEGAL ANALYSIS

Appellant initially contends that § 10–104 reflects an intent to limit its applicability to cases in which the amount in controversy does not exceed the jurisdictional limits of the district court. More specifically, he asserts:

> While the statute now applies to cases in the [c]ircuit [c]ourt, the conditions placed on using § 10–104 in [c]ircuit [c]ourt require that the litigation originate in [d]istrict [c]ourt, and that the "amount in controversy" not exceed the jurisdictional limits of the [d]istrict [c]ourt. Accordingly, it is apparent that the Maryland General Assembly never intended this legislation to allow the introduction of medical bills and records at trial without a physician's ˌestimony in cases in which the amount in controversy ˌxceeded the jurisdictional limits of the [d]istrict [c]ourt. Once the trial court allowed [appellee] to change the "amount in controversy" from his original *ad damnum* of $25,000 to the jury verdict of 310,340.91, [sic] that is precisely what occurred in the present case. The trial court's decision to allow a Rule 2–341 amendment of his *ad damnum* under the facts of this case constitutes a failure to acknowledge and apply the clear mandate of this statute.

During the colloquy between counsel and the court, the trial judge remarked:

> Yeah. And I certainly would not make that finding. I don't believe—I think the issue is I don't think it really

matters in my decision why you asked for a jury trial, whether it was to take advantage of the discovery.

That really is totally irrelevant. It's the fact that you did, and the jurisdictional consequences of doing it. That's the issue.

Appellee responds that § 10–104 is inapplicable to the case at hand because he filed the notice of intent to introduce medical records in the district court rather than the circuit court. He argues that, by the language of section (c)(ii), the notice, pursuant to § 10–104, is required to be filed in the court in which the case will be tried.

Section § 10–104(b)(2) and (c) [2] provides, in pertinent part: (b)(2) Subject to the provisions of paragraph (1) of this subsection, the provisions of this section apply to a proceeding in:

(i) The District Court; or

(ii) A circuit court if:

1. The case was originally filed in the District Court;

2. The case was transferred from the District Court to a circuit court;

and

3. The amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.

(c) *In general.*—(1) A writing or record of a health care provider described in this section is admissible under this section if:

(i) The writing or record is offered in the trial of a civil action in the District Court or a circuit court;

---

**2.** Section 10–104(b)(2)(ii) (Supp.1999) has since been amended to read: "A circuit court if the amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action." The Act making this change provided, however, that it "may not be applied ... to any case filed before October 1, 1999." 1999 Md. Laws ch. 433. The present case .was filed on December 2, 1998; the new language is thus inapplicable.

(ii) At least 60 days, except as provided in paragraph (2) of this subsection, before the beginning of the trial, the party who intends to introduce the writing or record files with the clerk of the court and serves on all other parties as provided under Maryland Rule 1–321:

    1.  Notice of the party's intent to introduce the writing or record without the support of a health care provider's testimony; and

    2.  A copy of the writing or record; and

(iii) The writing or record is otherwise admissible.

(2) A party, who receives a notice under paragraph (1) of this subsection and intends to introduce another writing or record of a health care provider without a health care provider's testimony, shall file and serve a notice of intent and copy of the writing or record at least 30 days before the beginning of the trial.

### I, II, and III

◼ We first address appellant's contention that, once appellee introduced medical records and bills at trial pursuant § 10–104, he was statutorily precluded from obtaining a judgment in excess of $25,000.

Courts and Judicial Proceedings § 10–104 was originally enacted by the Maryland General Assembly during the 1996 Session. *See* 1996 Md. Laws ch. 554. Its purpose was to allow "a medical or dental writing or record to be admissible without a physician's or dentist's testimony when presented in the trial of a civil action in the [d]istrict [c]ourt," when advance notice of the intent to introduce such a writing was given to the parties and the court. Bill Analysis, House Bill (H.B.) 1431, 1996 Session. The provision was amended in the 1997 Session by H.B. 423. As originally drafted, H.B. 423 would have "ma[de] these provisions applicable to a circuit court proceeding as well as the [d]istrict [c]ourt...." Bill Analysis, H.B. 423, 1997 Session. The bill was amended before enactment, however, to apply only to a proceeding in:

(I) The district court; or

(II) A circuit court if:

1. The case was originally filed in the district court;

2. The case was transferred from the district court to a circuit court; and

3. The amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.

1997 Md. Laws ch. 443; *see also* Second Reading, H.B. 423, 1997 Session.

Appellant contends that the language of the statute limiting its applicability to actions when the "amount in controversy ... does not exceed the amount specified in § 4–401 of this article for that type of action" limits appellee's recovery to $25,000. Courts and Judicial Proceedings § 4–401 lists the categories of cases over which the district court has exclusive original jurisdiction. The district court has exclusive original jurisdiction over an action in tort, "if the debt or damages claimed do not exceed $25,000...."

■ Determining whether the provisions of § 10–104 serve as a limit on damages "is a matter of statutory construction, the object of which is to discern and effectuate the intention of the Legislature." *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi*, 341 Md. 115, 119, 668 A.2d 929 (1995). As the Court stated in *Aluisi:*

Where the ordinary and common meaning of the words used in the statute is clear and unambiguous, usually, it is unnecessary to go further. Nevertheless, "(i)n the interest of completeness ... we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account."

*Id.* (citing *Harris v. State*, 331 Md. 137, 146, 626 A.2d 946 (1993)). The purpose of the statute may be ascertained by looking at any material "that fairly bears on the fundamental issue of legislative purpose or goal," including "amendments that occurred as it passed through the legislature [and] its

relationship to earlier and subsequent legislation. . . ." *Id.* (internal quotation omitted).

Both a plain reading of § 10–104(c)(2) and an examination of the history of its enactment evince an intent that medical records not be admitted under the statute unless the amount in controversy, as measured by the damages claimed, does not exceed $25,000. The most likely reason for this requirement is the policy decision that, when the defendant is exposed to damages greater than $25,000, the plaintiff should be required to authenticate the records through live testimony. The requirement would fail to serve its purpose, however, if records were introduced at trial under § 10–104 because the plaintiff plead damages of $25,000 or less, but the defendant was exposed to a potential verdict in excess of that amount.

When a case is transferred from a district court to a circuit court, just this result is possible. Although a plaintiff's claim for damages, or *ad damnum,* has historically been a limit on the verdict, the Court of Appeals held in *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995), that "the *ad damnum* does not inherently limit the power of the jury to render a verdict and does not inherently limit the power of the court to enter a judgment." *Id.* at 427, 663 A.2d 1256. Moreover, Maryland Rule 2–341 was amended in 1998 to add a committee note reading, "By leave of court, the court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned." Md. Rule 2–341(b) committee note (2000). To effectuate the legislative intent not to allow § 10–104 to be used in cases where the defendant is exposed to liability exceeding $25,000, we interpret the statute as requiring a limitation on damages. *Cf.* § 11–108 (placing a limitation on non-economic damages in personal injury actions); § 11–110 (limiting the damages for tortious injury to a pet).

Appellant also contends that appellee's mere notification of intent to introduce records under § 10–104 operated to limit damages. He argues that he made pre-trial tactical decisions in reliance on that notice and on his perception that his

liability was thereby limited to $25,000. When a party relies on notice pursuant to § 10–104, as appellant did in the case at hand, a party opponent, for the reasons we shall discuss, *infra*, may not recover damages in excess of $25,000.

The trial court further erred, posits appellant, in granting appellee leave to amend his *ad damnum* clause, pursuant to Maryland Rule 2–341, to conform to the verdict. As we stated above, Rule 2–341 was amended in 1998 to add a committee note reading, "[b]y leave of court, the court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned." Md. Rule 2–341(b) committee note (2000). We interpret § 10–104, however, to require that, once a plaintiff has introduced medical records pursuant to the statute, recovery is limited to $25,000. To allow a post-trial amendment of the *ad damnum* clause to conform to the verdict would defeat this requirement.

## IV

██  We next address the operation of § 10–104 in this case independent of the clear statutory mandate. As a threshold issue, appellee argues that § 10–104 is inapplicable to this appeal because a notice of intent was never filed in the circuit court. Appellee did file a § 10–104 notice in the district court and the notice was transferred to the circuit court as part of the record, pursuant to § 4–402(e)(2). Once in circuit court, appellee's counsel referred to "the admissibility of my § 10–104 statement" in a letter to opposing counsel, the document was referred to as the "10–104 statement" by the court and both attorneys at trial, and appellee's counsel argued for the document's admissibility by quoting language from § 10–104.

Courts and Judicial Proceedings § 4–402(e)(2) provides that, when a party files a timely demand for a jury trial, "jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court." Here, that court was the Circuit Court for Prince George's County, and the record, including appellee's § 10–104 notice, was so transmitted. The transfer of jurisdiction to the circuit court did

not render all proceedings below a nullity; for example, appellee was not required to file a new complaint. Appellee's notice of intent to introduce the medical records without supporting testimony was thus effective in the circuit court and § 10–104 is applicable to this appeal.

■ Appellee also argues that he introduced the document pursuant to stipulation, rather than pursuant to § 10–104. We find no merit in this argument. To the extent that appellant stipulated to the documents' admissibility, he stipulated that they were admissible pursuant to § 10–104. At trial, appellant objected to the admission of a portion of the documents because they would be admitted during the course of live testimony, and the court, after construing § 10–104, concluded that they were admissible. Appellee further argues that the admission of the documents was "harmless error," because their admissibility was otherwise established through a combination of pre-trial admissions by appellee and trial testimony. Appellant does not allege, however, that the trial court erred in admitting the documents. The harmless error doctrine is therefore inapplicable.

■ The applicability of § 10–104 is also the subject of one of appellant's assignments of error. He contends that the trial court erred in concluding that § 10–104 was inapplicable to the case because of appellee's presentation of live testimony of a treating chiropractor at trial. The relevant portion of the court's opinion and order disposing of post-trial motions is as follows:

> [T]he [appellant's] counsel wrote on May 18, 1998:
>
> I think the simplest thing for us to do is to agree that the 10–104 statement will come in if there is no live medical testimony. Otherwise, those portions of [the § ] 10–104 [statement] covered by the live testimony would be submitted through the witness.
>
> ... The [appellee] did, in fact, call the treating chiropractor, Michael Fadorsik [sic] as a witness. His records, as well as other medical records of [appellee] were admitted into evidence, over [appellant's] objection. He objected because

the chiropractor who generated and used the records was present to testify. . . .

The [c]ourt finds that [appellee] disclosed at the pre[-]trial conference that he intended to call the chiropractor. . . . The chiropractor testified, and was cross-examined as to his own records, and the other records upon which he relied. Since there was in fact court testimony concerning the records, [§ ] 10–104 does not apply to the facts of this case.

Even if [§ ] 10–104 did apply[,] the [c]ourt believes that Rule 2–341, which provides for "great liberality in the allowance of amendments," *Goldstein v. Peninsula Bank*, 41 Md.App. 224[, 396 A.2d 542] (1979)[,] would permit the [c]ourt to grant the [appellee's] post[-]trial motion for amendment of the *ad damnum* clause.

The court then denied appellant's motion for a new trial and granted appellee's motion to amend his *ad damnum* clause.

As we stated above, appellee did introduce the medical records, pursuant to § 10–104; the statute is therefore applicable to this case. The court summarily admitted the medical records as part of the § 10–104 statement; it did not mention any separate grounds for authentication or admissibility, nor was any argument heard on these matters. We think it significant that, in his correspondence of May 18, 1999, appellant's counsel, after alluding to the fact that appellee's counsel had indicated the possibility that Dr. Fedorczyk would testify, specifically said that he did not agree to the admissibility of a § 10–104 statement if there was to be live testimony. He further stated that he thought counsel was "entitled to one but not the other" and that "I think the simplest thing for us to do is to agree that the [§ ] 10–104 statement will come in if there is no live medical testimony. Otherwise, those portions of the [§ ] 10–104 covered by the live testimony would be submitted through the witness."

Notably, the first exhibit submitted was the notice pursuant to § 10–104 offered by counsel for appellee. As we discussed, *supra,* statutorily, § 10–104 and § 4–401 can only be read as a

limitation in the circuit court to those damages which one could have recovered in the district court.

It is clear from the record that appellant's counsel expressly advised counsel for appellee that he would agree to the admissibility of the § 10–104 statement if appellee's counsel did not offer the medical records through live testimony, but that he objected to appellant calling his expert if the medical evidence was to be admitted pursuant to § 10–104. Aside from the statutory basis, appellee was estopped from pursuing a larger damage award by deciding to proceed pursuant to § 10–104.

In a case in which a judgment creditor asked that a trustee be appointed to sell land formerly owned by a judgment debtor, his wife and mother-in-law as joint tenants, but which had been conveyed to a straw party, then back to the wife and mother-in-law, the judgment debtor contended that the court of equity was without power to appoint a trustee and make a sale because the earlier decree failed to define the extent and character of the judgment debtor's interest in the property and that the most the judgment creditor could obtain is recovery of the subject property to its owners of record prior to the conveyances held to be fraudulent. *Van Royen v. Lacey,* 266 Md. 649, 650, 296 A.2d 426 (1972). In holding that the judgment debtors were estopped from subsequently arguing that the judgment debtor and his wife owned one-half of the property as tenants in common and that the mother-in-law held the other one-half of the property as joint tenants with the judgment debtor and his wife, the Court of Appeals held:

> Be that as it may, estoppel by admission *or by pleading* has long been recognized in this State. In ... [*Edes v. Garey,* 46 Md. 24, 41 (1877),] the Court of Exchequer in *Cave v. Mills,* 7 H. & W. 927, was quoted as saying, "A man shall not be allowed to blow hot and cold, to claim at one time and deny at another." Accordingly, we hold that in this case the appellees are now *estopped by their own pleadings* from contending anything other than that the three parties owned as joint tenants, with no tenancy by the entireties involved.

*Id.* at 651–52, 296 A.2d 426 (1972) (emphasis added; citations omitted).

To like effect, we said in *Wilson v. Stanbury*, 118 Md.App. 209, 214–15, 702 A.2d 436 (1997), citing *WinMark Ltd. Partnership v. Miles & Stockbridge*, 345 Md. 614, 693 A.2d 824 (1997):

> If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.

*See also Stone v. Stone*, 230 Md. 248, 186 A.2d 590 (1962) (holding that trustee, who had admitted in certain written instruments that stock and a certain account were part of a trust, was estopped from denying that he did not have knowledge of the consequences to the trust nor of the injury to the beneficiaries if he later denied them or that he was acting in the capacity of a trustee); *Billman v. Maryland Deposit Insurance Fund Corp.*, 86 Md.App. 1, 20, 585 A.2d 238 (1991) (holding that, having persuaded the court not to consolidate the current case with a prior proceeding, appellants could not seek to have the subsequent proceeding dismissed by asserting that the claims could have been raised and litigated previously and therefore were barred by *res judicata* ).

Although we recognize that the dispositive issue is the legislative intent as gleaned from the enactment of § 10–104 in conjunction with § 4–401, fundamental fairness *requires* that counsel not be permitted tactically to disarm opposing

counsel by resorting to misleading legal maneuvers, particularly when counsel has expressed his objection.

In the course of preparation for trial, it is axiomatic that the nature and degree of preparation is dictated by what counsel perceives is at stake. One may very well be willing to stipulate to the admission of medical evidence pursuant to the provisions of § 10–104 if the only exposure is to an award of $25,000. On the other hand, in a case in which one must counter the far more persuasive testimony of an expert witness, rather than a cold medical record, the level of preparation could be expected to be much greater. Indeed, the statutory scheme which does not reference any case in which the original exclusive jurisdiction is in the circuit court evinces an intent that § 10–104 be invoked only in small claims involving less serious injuries and smaller potential damage awards. We hold, therefore, that, by proceeding pursuant to § 10–104, independent of the statutory limitation which we have discussed, appellant is estopped from pursuing damages in excess of that allowed under § 4–401.

## V

Finally, appellant contends that the trial court failed to exercise its discretion in denying appellant's Motion for New Trial or *Remittitur* and that this constituted reversible error. Appellant's motion, filed August 23, 1999, focused on three main arguments for a new trial, or in the alternative, *remittitur*. First, appellant argued that the verdict should be limited to $25,000 because appellee introduced medical records and bills under § 10–104. Second, appellant argued that the verdict was so excessive as to "shock the conscience." Appellant argued that various misconduct during trial justified granting a new trial, including the jury's award of more lost wages than were claimed, appellee's revelation that, contrary to his answers to interrogatories, he had been involved in other motor vehicle accidents, and appellee's testimony that appellant was insured.

After a series of counter-motions and responses, and a hearing on the motions, the trial court filed an opinion and order on October 22, 1999, denying appellant's motion for a new trial or *remittitur* and granting appellee's motion to amend the *ad damnum* clause to conform to the jury verdict. The court's opinion addressed only one of appellant's contentions—that appellee's use of § 10–104 limited the verdict to $25,000.

In the case *sub judice*, the trial court's opinion and order discussed the operation of § 10–104 and Rule 2–341 in the case, but did not address the issues of the excessiveness of the jury verdict or of the alleged irregularities of the trial. Whether distracted by the novel issue presented regarding § 10–104, or convinced that the other grounds for the motion had no merit, the court failed to exercise its discretion in disposing of the motion. Because we conclude that § 10–104 operated as a limitation on appellee's recovery, the excessiveness of the jury's verdict, *vel non,* is a non-issue.

■ Although "[a] decision regarding the excessiveness of a jury's award is within the discretion of the trial court, and an abuse of that discretion is reviewed by this Court under 'extraordinary circumstances,'" *Owens Corning v. Bauman,* 125 Md.App. 454, 726 A.2d 745 (1999), when the appellate court is "unable to say from [the] record that the trial judge did exercise his discretion to consider the claim of excessiveness of the verdict," the case must be remanded for consideration of the motion for *remittitur.* *Taylor,* 312 Md. 609, 624, 541 A.2d 969 (1988). Although the court's failure to exercise its discretion was an abuse of discretion, the error is of no consequence, given our decision regarding the limitation on the award recoverable.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**