BARACK FERRAZZANO KIRSCHBAUM PERLMAN AND NAGELBERG, Plaintiff-Appellee, v. ROBERT LOFFREDI *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—02—1006

Opinion filed June 12, 2003.—Rehearing denied September 4, 2003.

454

Tabet, DiVito & Rothstein, L.L.C. (Gino L. DiVito and Michael Rothstein,

of counsel), and Sarles & Ouimet (Patrick M. Ouimet, of counsel), both of Chicago, for appellants.

Barack Ferrazzano Kirschbaum Perlman & Nagelberg, L.L.C., of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

A collection action was brought by plaintiff law firm, Barack Ferrazzano Kirschbaum Perlman and Nagelberg (plaintiff), seeking to recover attorney fees and costs for services it rendered on behalf of defendants, Robert and Kevin Loffredi (defendants), in a National Association of Securities Dealers, Inc. (NASD), arbitration proceeding. The circuit court granted summary judgment in plaintiff's favor based on the doctrine of judicial estoppel. Defendants appeal on the ground that the court erred in applying judicial estoppel to the circumstances of this case. The facts set forth below emanate from the pleadings and affidavits filed in the circuit court proceedings.[1]

Defendants were representatives of a broker registered with NASD. On July 28, 1999, Robert Loffredi retained plaintiff to provide legal services and represent defendants in an arbitration action before the NASD against James Dreher and Dreher & Associates (collectively Dreher) on the ground that Dreher terminated defendants' registration status as representatives with the NASD and conspired to steal defendants' customers from them, accounts valued at more than $6 million. Because of their perceived loss of customers, defendants asked plaintiff to seek emergency injunctive relief and monetary damages. Plaintiff alleged that defendants agreed to pay plaintiff's standard legal fees at an hourly rate to be charged monthly, as well as expenses. According to defendants' pleadings, however, Ray Rezner, one of plaintiff's partners, estimated for Robert that the fees and expenses to pursue the action would total between $25,000 and $30,000. Defendants denied that plaintiff disclosed to Robert plaintiff's hourly rates.

Plaintiff immediately began investigating defendants' claim by reviewing documents and interviewing witnesses. On August 3, 1999, plaintiff filed a statement of claim on behalf of defendants initiating an NASD arbitration action against Dreher and two former employees of Raymond Financial Group, Inc., a corporation in which Robert is

---

[1]Defendants attempt to supplement the record with materials developed before the NASD panel, which never were filed in the circuit court proceedings or considered by the court. Their motion to so supplement the record, therefore, has been denied in a separate order. The contents of the proposed supplemental record are not determinative in reaching the result of the instant appeal.

sole shareholder. Plaintiff also moved on defendants' behalf for an immediate interim injunction, which it pursued with the NASD. Plaintiff drafted and filed a prehearing memorandum and prepared for the injunction hearing. At an evidentiary hearing on defendants' motion, which was held before an NASD arbitration panel, plaintiff examined and cross-examined various witnesses.

The NASD arbitration panel granted defendants an interim injunction. Defendants admittedly were "ecstatic" with the injunction because it required Dreher to transfer immediately Loffredi's customers to their new broker-dealer. Thereafter, plaintiff sent defendants separate bills, copies of which are contained in an exhibit attached to the complaint. Plaintiff's bills are dated August 26, 1999, September 21, 1999, October 21, 1999, November 19, 1999, December 21, 1999, January 25, 2000, February 25, 2000, and March 23, 2000. The bill sent in August 1999 reflected the sum of $16,870.05 in charges; the September 1999 bill for attorney fees showed a sum due of $83,999. Nothing in the record reveals defendants disputing or complaining about the sums showing as being owed and due after the bills were received, nor challenging the bills after their receipt as having exceeded the alleged estimate. No credits and payments were shown to have been made by defendants. Despite nonpayment, plaintiff continued to represent defendants in settlement negotiations to resolve the remaining claims in the NASD proceeding. In May 2000, plaintiff withdrew as defendants' counsel for nonpayment of plaintiff's fees.

Defendants thereafter retained the law firm of Schuyler Roche & Swirner, P.C. (Schuyler), to appear on their behalf. The NASD arbitration continued after plaintiff's withdrawal, primarily to adjudicate defendants' claims for damages.

On June 12, 2000, plaintiff filed their initial complaint in the circuit court of Cook County to recover attorney fees and expenses totaling $124,628.36, later amending it to allege two counts each against Robert for breach of contract and *quantum meruit*. Attached to the amended complaint was the exhibit consisting of plaintiff's periodic billing for legal services rendered by plaintiff to defendants, plus costs and advances. The exhibits attached to both the original and the amended complaint detailed specific dates, hours, activities and identities of the attorneys and clients involved in the billing of fees. Plaintiff also alleged two counts claiming *quantum meruit* against Kevin.

Defendants filed their answer and affirmative defenses to plaintiff's amended complaint, denying the allegation that they agreed to pay plaintiff's standard hourly rate for its services. Defendants admitted receiving plaintiff's fee statements for services rendered and admitted

never paying the bills. In an affirmative defense, defendants alleged that plaintiff may recover only the reasonable value of its services and that the legal fees sought by plaintiff were unreasonable in their totality. Defendants also asserted that plaintiff failed to disclose its hourly fee rates within a reasonable time after commencing its representation, citing Rule 1.5(b) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.5(b)). In addition, defendants denied that they owed plaintiff the amount sought because plaintiff failed to disclose in a timely manner that the fees and expenses incurred had exceeded greatly the original estimate of $25,000 to $30,000 for prosecution of the NASD case. Defendants generally denied that they never objected to any of the statements for legal services and expenses sent them; however, they made no claim that they objected to the fee amounts for having been redundant, unnecessary or inaccurate.

While the state court proceedings were pending, through Schuyler, defendants' other attorneys, defendants petitioned for attorney fees and costs in the NASD arbitration under the Uniform Deceptive Trade Practices Act (Act) (815 ILCS 510/1 *et seq.* (West 2000)). Defendants sought from Dreher reimbursement of all fees and expenses for both plaintiff and Schuyler which, they asserted, totaled $157,239.90. Defendants' NASD petition made no claim that plaintiff's fees and expenses did not represent the services rendered and expenses incurred, or that they were unnecessary, that they were redundant or otherwise inaccurate or were unreasonable in whole or in part. Paragraphs 7 and 8 of defendants' NASD fee petition are of particular importance, stating:

"7. Claimants [defendants here] were initially represented by the firm of Barack Ferrazzano Kirshbaum Perlman and Nagelberg ('BFKPN') [plaintiff here]. BFKPN prepared and filed the Statement of Claim and related papers in July and August 1999 and represented claimants at the interim injunctive hearing on August 24 and 25, 1999. BFKPN continued in its representation of claimants through May 10, 2000, at which time BFKPN withdrew.

8. Ray G. Rezner was the attorney principally responsible for claimants' representation by BFKPN. Attached as Exhibit A hereto are the Affidavit of Ray G. Rezner and the bills submitted by BFKPN to claimants in connection with this arbitration. *These bills show that the total attorney's fees incurred by claimants for work performed by BFKPN in connection with this arbitration are $115,830.00. The costs were $8,639.36.* Accordingly, total attorney's fees and costs for work performed by BFKPN are $124,469.36."
(Emphasis added.)

Further, and notwithstanding their denial in the state court proceedings that they agreed to pay plaintiff's standard hourly rates

and expenses, and their affirmative defense, defendants attached Rezner's affidavit to their NASD fee petition, which stated:

"6. Bills to claimants were prepared on the basis of the normal hourly rates charged by BFKPN for each attorney or paralegal who worked on this matter.

7. During the time that BFKPN represented claimants, my standard hourly rate was $390 per hour before October 1, 1999, and $420 per hour after October 1, 1999. The hourly rates of other billing professionals who have worked on this matter are as follows: W. Scott Porterfield—$300/hour before October 1, 1999, and $325/hour after October 1, 1999; Gayle Fisher—$195/hour before October 1, 1999, and $230/hour after October 1, 1999; Heather Green—$120/hour."

Attached to Rezner's affidavit were the same itemized bills detailing plaintiff's fees and expenses that defendants admitted they received in their pleadings.

On July 30, 2001, the NASD arbitration panel filed its written decision regarding defendants' case. No damages were awarded to defendants; however, the findings stated, "[i]n deciding to award attorneys' fees, the panel considered the arguments of the parties, as well as the pleadings[,] briefs and case law filed on their behalf, and determined that authority existed for an award of attorney's [sic] fees to [defendants]. [Dreher is] jointly and severally liable for and shall pay to the [defendants] the following attorneys' fees in the amount of $70,000.00." In addition, the panel stated, "*[e]xcept as specified otherwise herein, each party shall bear its own costs and attorney's [sic] fees.*" (Emphasis added.)

Following the NASD arbitration panel's decision and award, plaintiff moved for summary judgment in the circuit court, asserting that defendants' judicial admissions established that an attorney-client relationship existed with plaintiff for the purposes of the NASD proceedings and that defendants were estopped judicially from contesting the entire amount of plaintiff's bill.

Defendants responded to plaintiff's motion, arguing that judicial estoppel did not apply and, because the NASD arbitration panel already had determined that the reasonable attorney fees for the work performed by both plaintiff and Schuyler was $70,000, the doctrine of *res judicata* barred plaintiff from seeking a recovery against defendants in excess of the fee award.[2]

On December 6, 2001, the circuit court entered summary judgment in plaintiff's favor in the amount of $124,469.36, the entire

---

[2]Defendants do not assert a *res judicata* argument on appeal.

amount of billed fees and expenses. Defendants' emergency motion to reconsider and vacate the summary judgment order was denied. Defendants timely appeal.

Before addressing the merits of the instant case, the appropriate standard of review must be determined. Defendants argue that the appropriate standard of review is *de novo* because they are not challenging the circuit court's discretionary authority to invoke the doctrine of judicial estoppel, but instead contest its determination that they satisfied the elements of judicial estoppel as a matter of law. Plaintiff responds that, after this court considers the application of judicial estoppel under an abuse of discretion standard, the order granting summary judgment then is reviewed *de novo*.

■ In *Bidani v. Lewis*, 285 Ill. App. 3d 545, 549, 675 N.E.2d 647 (1996) (*Bidani*), the circuit court entered summary judgment for defendants based upon the doctrine of judicial estoppel. There, the appellate court reviewed application of the doctrine under an abuse of discretion standard. *Bidani*, 285 Ill. App. 3d at 550.[3] We elect to follow *Bidani* with respect to the standard of review as to judicial estoppel.

■ Summary judgment will be granted only when the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). When reviewing the grant of a summary judgment motion, this court may consider pleadings, depositions and admissions on file, together with any affidavits. 735 ILCS 5/2—1005(c) (West 2000). Review of the decision to grant summary judgment in the instant case is *de novo*. *Anderson v. Alberto-Culver USA, Inc.*, 317 Ill. App. 3d 1104, 1110, 740 N.E.2d 819 (2000).

## I

Defendants identify error in the circuit court's grant of summary judgment in plaintiff's favor, claiming the court improperly held that judicial estoppel barred their challenge to the reasonableness of attorney fees where they sought the same fees in a separate petition filed with the NASD, which resulted in a partial fee award of $70,000. According to defendants, the partial fee award should be construed as a finding by the NASD arbitration panel that the remaining fees of $87,239.90 were rejected as unreasonable.

Plaintiff responds that the circuit court properly applied the

---

[3]In noting the standard of review, the *Bidani* court cited *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850, 635 N.E.2d 485 (1994), a case that did not involve summary judgment. The supreme court in *People v. Caballero*, 206 Ill. 2d 65, 80 (2002), citing *Bidani*, also recently reviewed application of the doctrine under an abuse of discretion standard. No summary judgment issues were involved in that case.

doctrine of judicial estoppel and, therefore, correctly entered summary judgment in its favor as a matter of law. Plaintiff asserts that the NASD arbitration panel did not rule on the issue of reasonable attorney fees in its findings and, even if it had, defendants' petition for statutory fee-shifting before the NASD is different from an independent court action for fees by an attorney against a former client. Plaintiff maintains that if a fee-shifting petition partially is granted, as in the instant case, the attorney nevertheless is entitled to receive the remaining payment of fees, costs and expenses incurred from the client, as the NASD award provides.

■ The doctrine of judicial estoppel postulates that "a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding." *Bidani*, 285 Ill. App. 3d at 550. The purpose of the doctrine is "to promote the truth and to protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment." *Bidani*, 285 Ill. App. 3d at 550. The five elements necessary for the application of judicial estoppel include the following: "the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intended for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *People v. Caballero*, 206 Ill. 2d 65, 80 (2002) (*Caballero*). Except for the third element,[4] elements one, two, four and five of the doctrine contested in their application by defendants will be addressed.

## A

Defendants challenge application of the first and second judicial estoppel elements, maintaining that, in the arbitration proceeding before the NASD, their fee petition did not assert the position that all of plaintiff's legal fees were reasonable, while before the circuit court, defendants contended the fees were unreasonable. Defendants insist they did not argue two inconsistent positions as required in order to apply the judicial estoppel doctrine, but simply took advantage of the fee-shifting provision of the Act in seeking their fees. Defendants maintain specifically that their entitlement to an award of attorney fees in the arbitration was governed by "section 3 of the Uniform Deceptive Trade Practices Act, a statutory fee shifting provision," and, since the arbitration panel awarded $70,000 to both law firms representing them in the arbitration proceedings, the balance of fees

---

[4]Defendants do not contest application of the third element of the judicial estoppel doctrine, as stated in their briefs.

remaining, which plaintiff claims in this action, "must perforce be deemed unreasonable," relying on *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 282, 757 N.E.2d 1271 (2001) *(Esker)*.

■ The issues raised in this appeal will be determined by the pleadings filed by the parties, rather then from inferences sought to be drawn from unspoken words or findings not made. A reviewing court can affirm the decision of the court below for any reason or ground appearing in the record, regardless of whether the reasons given by the *nisi prius* court or specific findings made are correct or sound. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983); *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 502, 520 N.E.2d 37 (1988); *King v. City of Chicago*, 324 Ill. App. 2d 856, 859, 755 N.E.2d 143 (2001). Whether the unreasonableness of plaintiff's fees was challenged effectively by defendants before the NASD, or not, need not be decided here, since the decision of the circuit court must be affirmed for other reasons appearing in the record.

■ Section 3 (815 ILCS 510/3 (West 2000)) (section 3) of the Act, only partially quoted by defendants in their principal brief, goes on to provide:

> "The relief provided in this Section *is in addition to remedies otherwise available against the same conduct under the common law* or other statutes of this State." (Emphasis added.)

Equally in contradistinction to defendants' theory is the award language of the arbitration panel stating, at paragraph 4, in part, that *"each party shall bear its own costs and attorney's [sic] fees."* (Emphasis added.) Nothing in *Esker*, which involved a private fee-shifting arrangement, is analogous to the statutory and NASD award language recognizing the right to additional fees, as are involved in the present case.[5]

The record shows that defendants demonstrably took two contrary positions before the two different tribunals. In their response to plaintiff's first amended complaint in the circuit court, filed before

---

[5]Defendant's reliance upon *Blankenship v. Dialist International Corp.*, 209 Ill. App. 3d 920, 568 N.E.2d 503 (1991), also is misplaced. The statute there (Ill. Rev. Stat. 1985, ch. 121½, par. 721(1)) specifically required consideration of "reasonable attorney's fees" as part of its award to the prevailing party. Under the instant statute authorizing attorney fees, nothing precluded the arbitrators from awarding less than the total of reasonable fees due the attorney, which explains the additional award language, "each party shall bear its own costs and attorney's [sic] fees," which is an additional remedy "otherwise available against the same conduct under the common law." 815 ILCS 510/3 (West 2000).

they petitioned the NASD, defendants denied that they agreed to pay plaintiff's legal fees on an hourly rate to be charged on a monthly basis in representing defendants in the NASD action. Defendants specifically denied that they "incurred" the amount sought by plaintiff.[6] As detailed earlier in this opinion, defendants' NASD petition sought to recover *all* outstanding attorney fees from Dreher, submitting in its support the Rezner affidavit, outlining hourly rates for attorneys and staff assigned to defendant's case and plaintiff's particularization of the legal services plaintiff performed, including the number of hours, and costs incurred, and sought, "an award of the reasonable *attorneys' [sic] fees and costs they have incurred* in this matter." (Emphasis added.)

Defendants' submission of plaintiff's detailed legal and expense billing could have had only the purpose and intended effect of persuading the NASD arbitration panel to accept plaintiff's affidavit as true and, based upon the truth and accuracy of its submission, that the arbitration panel would grant the remedy requested. If the purpose and intent of defendants' submission were otherwise, it would have run afoul of several Illinois Rules of Professional Conduct.[7]

In *Galena Park Home v. Krughoff*, 183 Ill. App. 3d 206, 208, 538 N.E.2d 1366 (1989) (*Galena Park*), defendant stated in a previously

---

[6]Defendants seek to gloss over their choice of the word "incurred" by explaining that the amounts set forth were only "billed"; however, their petition before the NASD arbitrators reflects their liability for the fees. *Anest v. Audino*, 332 Ill. App. 3d 468, 480, 773 N.E.2d 202 (2002); Black's Law Dictionary 771 (7th ed. 1999).

[7]For example:

"Rule 1.2. Scope of Representation

\* \* \*

(g) A lawyer who knows a client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication." 134 Ill. 2d R. 1.2(g).

"Rule 3.1. Meritorious Claims and Contentions

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous \* \* \*." 134 Ill. 2d R. 3.1.

"Rule 3.3. Conduct Before a Tribunal

(a) In appearing in a professional capacity before a tribunal, a lawyer shall not:

(1) make a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false;

filed, verified complaint against a nonparty, Blue Cross/Blue Shield, that he personally was liable for the costs of his father's care and that he had expended the amount on his father's bill. As a result of that proceeding, he and his attorney received payment on the bill. In the second proceeding, defendant stated that he was not responsible for the full amount of the unpaid bill, but only was required to pay the amount he received after the deduction of attorney fees. The *Galena Park* court ruled that defendant's two positions were inconsistent and affirmed the circuit court's finding under the doctrine of judicial estoppel. 183 Ill. App. 3d at 208-09. To the same effect are *People v. Wisbrock*, 223 Ill. App. 3d 173, 175, 584 N.E.2d 513 (1991), and *McDonald's Corp. v. American Motorists Insurance Co.*, 321 Ill. App. 3d 972, 987, 748 N.E.2d 771 (2001).

The detailed information submitted by defendants as contained in plaintiff's attorney's affidavit seeking payment for "the total attorney's [*sic*] fees incurred" is analogous to the "deliberate, detailed and unequivocal" assertion of a judicial admission. In *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 212-13, 545 N.E.2d 695 (1989) (*Van's Material Co.*), the supreme court observed:

> "The Department attempts to distinguish *Hansen* by asserting that its answer did not involve a fact and was additionally not unequivocal. While it may be more than a matter of semantics as to what constitutes a fact, we are not persuaded by the Department's arguments. The question posed to the Department did not ask for a conclusion; rather, it asked the Department to identify its 'contentions.' The Department would be the only body able to answer that question; its beliefs or contentions are peculiarly and

---

(2) fail to disclose to a tribunal a material fact known to the lawyer when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

&ast;&ast;&ast;

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures;

(5) participate in the creation or preservation of evidence when the lawyer knows or reasonably should know the evidence is false[.]" 134 Ill. 2d R. 3.3.

"Rule 4.1. Truthfulness in Statements to Others

In the course of representing a client a lawyer shall not:

(a) make a statement of material fact or law to a third person which statement the lawyer knows or reasonably should know is false; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6." 134 Ill. 2d R. 4.1.

completely within its own determinations. (See *Hansen*, 155 Ill. App. 3d at 482.) ***

Additionally, current arguments that the answer was not unequivocal are without merit. While the court in *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, as the Department correctly notes, did recognize that deposition testimony is ordinarily an evidentiary admission that may be controverted, the court also went on to acknowledge and apply the reasoning expressed by the court in *Young v. Pease* (1983), 114 Ill. App. 3d 120, wherein the court noted that ' "[t]here may be cases in which admissions at pre-trial depositions are so deliberate, detailed, and unequivocal, as to matters within the party's personal knowledge, that they will conclusively bind the party-deponent, and he will not be heard to contradict the admission at the trial" ' (*Young*, 114 Ill. App. 3d at 122-23)."

▪ Here, of course, the matter of fees for which they were charged and which they represented to the arbitrators that they had incurred were within defendants' personal knowledge. Having submitted plaintiff's charges as those they admitted having incurred, which were the same amounts for which they sought reimbursement from the NASD panel, defendants will not be heard to contradict that position at a subsequent judicial proceeding. *Van's Material Co.*, 131 Ill. 2d at 213.

Based upon the foregoing, the circuit court did not abuse its discretion in finding defendants have asserted two diametrically opposed positions for the purposes of satisfying the first two elements of the judicial estoppel doctrine.

## B

▪ Defendants next challenge the circuit court's finding with respect to the fourth element of the judicial estoppel doctrine, arguing that their fee petition was not submitted under oath and that the absence of the oath alone is sufficient to require reversal of the court's grant of summary judgment.

Contrary to defendants' insistence, in *Caballero*, the requirement of an oath was not included among the five judicial estoppel elements. All that is required to satisfy this element is that the party being estopped must intend for the trier of fact to accept the truth of the facts alleged, the fourth element set forth in *Caballero*.

Although defendants alleged plaintiff's fees were unreasonable before the circuit court, as previously discussed, the issue of reasonableness with respect to those fees need not be decided for the purposes of applying judicial estoppel to the circumstances in the instant case. In court, defendants plead that they did not agree to pay

plaintiff's standard hourly rates; in their petition for fees before the NASD arbitrators, however, they presented plaintiff's statement of fees for the same hours to show the fees they incurred in an attempt to recover *all* attorney fees due and owing to plaintiff. Previously noted in footnote 7 are the constraints imposed by the Illinois Rules of Professional conduct upon submissions made to courts and other tribunals by attorneys. Nothing is found in the nature of fee-shifting procedures which would contemplate, encourage or condone mendacity or disingenuousness in submitting fee petitions by officers of the court to a tribunal of justice, whether under oath, or not.[8]

Moreover, defendants' argument impugns their own veracity. By making the assertion that judicial estoppel cannot be applied because their two alleged inconsistent positions were not submitted under oath, they are challenging, in effect, whether their own statements are true, as opposed to the facts in *Caballero*, where defendant challenged the truth of the positions submitted by the opposing party, the State.

Defendants here intended that both the NASD arbitration panel and the circuit court accept the truth of the allegations made in their respective pleadings. Therefore, the fourth element of the judicial estoppel doctrine is satisfied, as the circuit court properly held.

## C

■ Defendants next contest the fifth element of the judicial estoppel doctrine, asserting that they were "spectacularly unsuccessful" in establishing that the $124,496.36 in fees incurred were due plaintiff because defendants received less than that amount from the NASD arbitration panel.

Defendants again contradict their own argument. They first insist that their fee petition did not claim that all plaintiff's fees as delineated in plaintiff's billing statement represented the amount due plaintiff. Then, in order to overcome the fifth element of judicial estoppel, defendants argue that only the fees actually awarded by the NASD

---

[8]Further, in *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 510, 445 N.E.2d 506 (1983) (*Coe*), the appellate court discarded the technical requirement of an oath in administrative proceedings, stating that the judicial estoppel doctrine should apply in cases where the party "intended the trier to accept the truth of the party's position" regardless of whether the prior position was made under oath. The *Coe* court also noted that "application of the doctrine in administrative proceedings necessitates that the formal oath be eliminated. *** It would be totally illogical to allow parties to take one position in an agency proceeding and then allow them to take an inconsistent position in subsequent court proceedings simply because the first position was not taken under formal oath." 112 Ill. App. 3d at 510-11.

arbitration panel were owed plaintiff and the balance "must perforce be deemed unreasonable," because they were either unnecessary or excessive. Defendants further assert that once the NASD panel ruled that their request for attorney fees would be allowed only in the amount of $70,000, it was not inconsistent for defendants to contest those fees exceeding that amount in the circuit court. As previously noted, the NASD award makes no finding or suggestion that it was limiting fees due plaintiff and Schuyler to the $70,000 amount; instead, the language expressly requires the parties to bear their own costs and attorney fees. Of further significance in the circuit court proceedings, defendants contested the *entire* amount of plaintiff's fees, not merely any amount that might remain.

Defendants "hoist themselves upon their own petard." Both section 3 of the Act and the arbitration award specifically contemplate by their language that *more* than the statutory award may be merited, contrary to defendants' argument. If a petition seeking fees pursuant to a fee-shifting clause is denied, the successful litigant's attorney nevertheless is entitled to payment from his own client. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595, 740 N.E.2d 501 (2000). Defendants were awarded $70,000 from the NASD panel, but plaintiff nevertheless is entitled to seek payment of its remaining fees.

The Seventh Circuit Court of Appeals has explained that the doctrine of judicial estoppel is "intended to prevent the perversion of the judicial process. [Citation.] It is to be applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice,' [citation], to prevent litigants from 'playing fast and loose with the courts.' " *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990), quoting *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953). Here, defendants give the appearance of playing "fast and loose" with the circuit court by denying responsibility for payment of the attorney fees, yet attempting to recover the entire amount of attorney fees which it owed to plaintiff from the NASD arbitration panel via a fee-shifting petition. Defendants' position accordingly is rejected.

All the requirements for application of the judicial estoppel doctrine have been met. The circuit court did not abuse its discretion in this aspect of the case.

## II

■ Next to be considered is the grant of summary judgment in this case. Defendants are judicially estopped from attempting to create a question of fact for purposes of summary judgment by contradicting

their previous positions. There was no genuine, triable issue of fact remaining for the instant circuit court to decide. *Spirit of Excellence, Ltd. v. Intercargo Insurance Co.*, 334 Ill. App. 3d 136, 144, 777 N.E.2d 660 (2002). The court properly granted plaintiff's summary judgment motion.

For the reasons stated above, the decision of the circuit court of Cook County to apply the doctrine of judicial estoppel to the circumstances of this case and grant summary judgment in favor of plaintiff is affirmed.

Affirmed.

THEIS, P.J., and KARNEZIS, J., concur.